UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GREAT LAKES INSURANCE, S.E. | * | CIVIL ACTION |
| VERSUS | * | NO. 20-2795 |
| GRAY GROUP INVESTMENTS, LLC | * | SECTION "R" (2) |

**ORDER AND REASONS**

Pending before me is the Combined Motions for Protective Order and to Quash or Modify Subpoena filed by Defendant and Counter-Claimant Gray Group Investments, LLC ("Gray Group") and Non-Party A.J. Gallagher & Co. ("Gallagher") (ECF No. 73). Plaintiff Great Lakes Insurance S.E. ("Great Lakes") timely filed an Opposition Memorandum (ECF No. 77), and movants filed a Reply Memorandum with leave of court. ECF Nos. 84-86.

After hearing oral argument on the motions on Wednesday, July 7, 2021, the Court took these matters under advisement. Having considered the record, the oral and written arguments of counsel, and the applicable law, the combined motions are GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

**I.  BACKGROUND**

Plaintiff Great Lakes issued a marine insurance policy (Policy No. CSRYP/180024 (the "Policy")) covering Defendant Gray Group's vessel (HELLO DOLLY VI) for the period of January 1, 2020 through January 1, 2021. ECF No. 1, ¶ 6, at 2-3. Defendant's vessel sustained damage during Hurricane Sally on September 16, 2020, while at one of its operators' private docks in Pensacola, Florida. *Id.* ¶ 11, at 6. Shortly after the hurricane, Great Lakes filed this suit seeking a declaration that its coverage is void because Gray Group breached the Hurricane Questionnaire/Plan by not mooring the vessel at Orleans Marina, not fully manning the vessel, not evacuating to a safe harbor, and not deploying the vessel's anchors. *Id.* ¶ 14, at 7; ¶ 17 at 8-9.

1

Gray Group filed a Motion for Judgment on the Pleadings, which included a declaration by a Gallagher account executive attesting to the attached true copies of the Application (ECF No. 22-3), Hurricane Questionnaire/Plan (ECF No. 22-4), and Cover Note and Endorsements (ECF No. 22-5). ECF No. 22-2. Thereafter, Great Lakes issued discovery requests to Gray Group and a subpoena duces tecum to Gallagher. This Court quashed Great Lakes' subpoena duces tecum to Gallagher based on its procedural defects. ECF No. 60, at 14-15. Due to the procedural deficiencies, the court did not address the scope of the subpoena and/or whether the information sought was cumulative or duplicative. *Id*. at 19.

Great Lakes then re-issued the virtually identical subpoena duces tecum, serving it properly and allowing sufficient time for response. ECF No. 77-1. It seeks:

1. Any and all insurance related documents for Gray Group Investments, LLC, including, but not limited to, insurance applications, insurance submissions, Hurricane Questionnaire Plans, Hurricane Protection Plans, marine surveys, Renewal Questionnaires, insurance binders, insurance policies, endorsements, and any communications with respect to insurance placement and/or other documents remotely related to the placement or attempted placement of insurance on the HELLO DOLLY VI and/or the HELLO DOLLY VII for the years 2017-2021.

2. All communications internally or with the insurance underwriters, London based agents, other brokers or agents the Gray Group Investments, LLC, regarding the Application, the Hurricane Questionnaire Plan, the Hurricane Protection Plan, the mooring location for the vessel from July 1st through November 1st, any change in premium based upon changes of the mooring location for the vessel, or any other aspect of where the HELLO DOLLY VI and/or the HELLO DOLLY VII would need to be moored if not in navigation, how it was to be protected from a named storm that was approaching, and/or any other related information.

3. Any and all communications internally or with Gray Group Investments, LLC, any of their owners, members, officers, directors, employees, crew members, shareholders, agents, assigns, or legal representatives, including attorneys, as to Hurricane Sally damage to the HELLO DOLLY VI.

4. Any and all communications internally or with Gray Group Investments, LLC, any of their owners, members, officers, directors, employees, crew members, shareholders,

2

agents, assigns, or legal representatives, including attorneys, as to Hurricane Sally damage to the HELLO DOLLY VII.[1]

Gallagher joined with Gray Group to file this Combined Motion for Protective Order and/or to Quash or Modify. ECF No. 73. Movants argue that the subpoena duces tecum does not seek information relevant to any claim or defense, is overly broad and burdensome, and disproportionate to the needs of the case and the issues at stake in this litigation. ECF No. 73-2, at 2. Movants again argue that the documents sought are not relevant because the determination of coverage is governed by the terms of the insurance policy, without resort to extrinsic evidence, and that this discovery is cumulative because Great Lakes already has all documents and communications that it relied upon to underwrite and price the coverage. ECF No. 86, at 1-2. Movants also argue that the subpoena duces tecum seeks privileged and/or protected information and communications. ECF No. 73-2, at 2. Alternatively, movants argue that the subpoena duces tecum should be modified and that production be delayed pending disposition of Gray Group's pending and/or related discovery motions and responses. *Id*. at 3.

Great Lakes opposed the combined motions, arguing that the subpoena is proper, proportional to the needs of the case, and does not seek privileged material. ECF No. 77, at 1. Great Lakes argues that the documents are critical because Gallagher served as Gray Group's retail agent/broker as to the placement of insurance on numerous vessels over the years, and it dealt with middlemen brokers who dealt with Great Lakes' London managing agent. *Id*. at 2. It claims the subpoena duces tecum is "narrowly tailored" to avoid undue burden or undue hardship. *Id*. at 3. Based on this Court's prior rulings (i.e., ECF No. 60, at 18-19), Great Lakes agrees that the subpoena may be modified to exclude documents related solely to HELLO DOLLY VII, but

---

[1] ECF No. 70-1, at 4.

contends any HELLO DOLLY VI document that also addresses the HELLO DOLLY VII, should be produced. ECF No. 77, at 3 nn.1 & 2.

## II. APPLICABLE LAW

### A. Scope of Discovery

Rule 26(b)(1) provides, in pertinent part: "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). This broad duty of disclosure extends to all documents that fit the definition of relevance for the purposes of discovery—whether the documents are good, bad, or indifferent.[2] Federal Rules of Civil Procedure 26(a) and (e) also require a litigant to supplement disclosures and discovery responses once the litigant learns that the disclosures or discovery responses are incomplete. *See* Fed. R. Civ. P. 26.

Information need not be admissible into evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). Rather, the information merely needs to be proportional and relevant to any claim or defense. *Id.* The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage.[3] This broader scope is necessary given the nature of litigation, where determinations of relevance for discovery purposes are made well in advance of trial.[4] Facts that are not considered in determining the ultimate issues may be

---

[2] *Yelton v. PHI, Inc.*, 279 F.R.D. 377, 384 (E.D. La. 2011), *objections overruled*, 284 F.R.D. 374 (E.D. La. 2012) (citation omitted).
[3] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted).
[4] *Id.* n.5 (citation omitted).

4

eliminated in due course of the proceeding.[5] At the discovery stage, relevance includes "[a]ny matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."[6] Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[7] If relevance is in doubt, the court should be permissive in allowing discovery.[8]

A party seeking discovery must comply with Rule 26(b)(1)'s proportionality limits on discovery requests and is subject to Rule 26(g)(1)(B)'s requirement to certify that the discovery request is "(i) consistent with these rules . . . ; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Fed. R. Civ. P. 26(g)(1)(B). If a party resists discovery on the grounds of proportionality, it bears the burden of making a specific objection and showing that the discovery fails Rule 26(b)'s proportionality calculation by coming forward with specific information to address the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[9]

---

[5] *Id.*
[6] *Id*. at 590 (citations omitted).
[7] *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)).
[8] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987)).
[9] *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016).

While the discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials,[10] discovery does have "'ultimate and necessary boundaries.'"[11] Rule 26(b)(2)(C) *mandates* that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."[12] Further, Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."[13] While relevancy in the discovery context is broader than in the trial context, that legal tenet should not be misapplied to allow fishing expeditions in discovery.[14]

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A protective order may forbid discovery or specify terms for discovery. *Id.* 26(c)(1)(A), (B). Rule 26's requirement of "good cause" to support a protective order places the burden upon the movant to show the necessity of its issuance, which contemplates a "'particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'"[15]

---

[10] *Herbert v. Lando*, 441 U.S. 153, 176 (1979) (citations omitted).
[11] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).
[12] Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).
[13] *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (citation omitted).
[14] *Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, No. 16-17277, 2017 WL 3011144, at *4 (E.D. La. July 14, 2017) (citations omitted); *see also Crosby*, 647 F.3d at 264; *Ganpat v. E. Pac. Shipping, PTE, Ltd*., No. 18-13556, 2020 WL 1046336, at *3 (E.D. La. Mar. 4, 2020).
[15] *In re Terra Int'l, Inc*., 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

## B. Discovery from Non-Parties Through Subpoenas

Discovery may be obtained from non-parties pursuant to Rule 45 of the Federal Rules of Civil Procedure. Although governed in the first instance by Rule 45, non-party subpoenas are also subject to the parameters of Rule 26.[16] "Both Rules 45 and 26 authorize the court to modify a subpoena duces tecum when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45."[17] Rule 45 also provides additional protections to non-parties. Specifically, the party issuing a subpoena to a non-party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

The person filing the motion to quash has the burden to demonstrate that compliance would impose undue burden or expense.[18] To determine whether the subpoena presents an undue burden, the Fifth Circuit considers the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.[19] "Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation."[20] "Further, if the person to whom the document

---

[16] *In re Application of Time, Inc.*, No. 99-2916, 1999 WL 804090, at *7 (E.D. La. Oct. 6, 1999), *aff'd*, 209 F.3d 719 (5th Cir. 2000).
[17] *Hahn v. Hunt*, No. 15-2867, 2016 WL 1587405, at *2 (E.D. La. Apr. 20, 2016) (citing Fed. R. Civ. P. 45(d)(3); 26(c)(1)(D)).
[18] *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (finding party resisting discovery must show why each discovery request is not relevant or otherwise objectionable).
[19] *Wiwa*, 392 F.3d at 818 (internal citations omitted).
[20] *Id.* (citation omitted).

request is made is a non-party, the court may also consider the expense and inconvenience to the non-party."[21] Modification of a subpoena is generally preferable to quashing it outright.[22]

## C. Invocation of Privilege

Proper substantiation of a privilege objection imposes an evidentiary burden, and the party asserting the objection must prove that each document it has withheld is privileged, and it cannot rely merely on a blanket assertion of privilege.[23] A party invoking privilege or work product "***must***: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A) (emphasis added). The "privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test[ ] the merits of' the privilege claim."[24] The use of the word "must" indicates that a privilege log, including the detail specified by Rule 26(b)(5)(A)(i) and (ii), is mandatory.[25]

---

[21] *Id.* (citation omitted).
[22] *Id*; *Tiberi v. CIGNA, Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994); *see also Linder v. Nat'l Sec. Agency*, 94 F.3d 693, 698 (D.C. Cir. 1996) ("[M]odification of a subpoena is generally preferred to outright quashing . . . .").
[23] *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002) (citation omitted); *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001); *Hodges, Grant & Kaufman v. United States*, 768 F.2d 719, 721 (5th Cir. 1985); *Jordan v. Aries Marine Corp.*, No. 14-377, 2015 WL 151336, at *3 (E.D. La. Jan. 12, 2015) (citing *In re EEOC*, 207 F. App'x 426, 431 (5th Cir. 2006); *Woodard v. Andrus*, No. 2:03–2098, 2008 WL 2540600, at *3 (W.D. La. June 20, 2008) (citing *High Tech Commc'ns, Inc. v. Panasonic Co.*, No. 94–1447, 1995 WL 45847, at * 1 (E.D. La. Feb. 2, 1995) (citing *Hodges, Grant & Kaufman*, 768 F.2d at 721; *In re Shell Oil Refinery*, 812 F. Supp. 658, 661 (E.D.La.1993))).
[24] *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (citing *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982*); NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011) ("When a party relies on a privilege log to assert these privileges, the log must 'as to each document . . . set[] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed.'") (quoting *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993) (internal quotation marks omitted)))).
[25] "A privilege log . . . should not only identify the date, the author, and all recipients of each document listed therein, but should also describe the document's subject matter, the purpose for its production, and a specific explanation of why the document is privileged or immune from discovery." *Peacock v. Merrill*, No. 08-01-B-M2, 2008 WL 687195, at *3 (M.D. La. Mar. 10, 2008) (citing *Jones v. Hamilton Cty. Sheriff's Dep't*, No. IP 02-0808-C-H/K, 2003 WL 21383332, at *4 (S.D. Ind. June 12, 2003)).

## III.  ANALYSIS

Movants have not carried their burden to establish, via particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements, undue burden or proportionality.  While the Court appreciates movants' "fishing expedition" argument, Great Lakes' discovery requests would only constitute a fishing expedition if Gray Group's argument regarding the policy and extrinsic evidence is accepted, which is a merits issue that is not resolved on a discovery dispute.  Given Great Lakes' assertion that the hurricane plan is part of the policy, Great Lakes' efforts to discover information from Gray Group or its agent Gallagher relating to the plan and any communications regarding it would be relevant to that claim.  Thus, Gray Group has not established that the discovery sought could have no possible bearing on Great Lakes' claim.

Nevertheless, Great Lakes' subpoena duces tecum is, in certain respects, facially overbroad.  As indicated during the hearing and in this Court's prior order, information relating to a different policy covering a different vessel (HELLO DOLLY VII) has no relevance to any claim or defense in this case and discovery of same is not proportional to the needs of this case.  Accordingly, item 4 on the subpoena duces tecum must be stricken as well as any reference to the HELLO DOLLY VII in items 1-3.  Likewise, the request for documents from 2017 through 2021 is unnecessary given that the hurricane occurred in 2020 and the claim was under the single policy in place during January 2020 through January 2021.  While Great Lakes argued that marine surveys could potentially be relevant to a claim regarding the extent or validity of insurance coverage of vessels, it fails to demonstrate how marine surveys would be relevant to the actual claims or defenses asserted in this case.  In addition, Great Lakes' request for "any and all insurance related documents for Gray Group" is patently and facially overbroad.  Likewise, its request for "any communication . . . and/or other documents remotely related to" HELLO DOLLY VI's insurance

placement is overbroad, fails to identify with specificity the items sought, and would lead to discovery burdens disproportionate to the needs of this case.

Modification, rather than quashing, the subpoena duces tecum is the proper manner to address these issues. Accordingly, the subpoena is modified to require Gallagher to produce the following documents, for the 2019-2021 period:

1. Gray Group Investments, LLC's insurance applications, submissions, Hurricane Questionnaire Plans, Hurricane Protection Plans, Renewal Questionnaires, insurance binders, insurance policies, endorsements, and other documents or written communications relating to the placement of insurance on the HELLO DOLLY VI.

2. Communications internally or with insurance underwriters, London based agents, other brokers or agents of Gray Group Investments, LLC regarding the Application, the Hurricane Questionnaire Plan, the Hurricane Protection Plan, the mooring location for the vessel from July 1st through November 1st, 2020, how HELLO DOLLY VI was to be protected from an approaching named storm, where HELLO DOLLY VI would need to be moored when not in navigation, and/or any change in premium based upon changes of the mooring location for the HELLO DOLLY VI.

3. Communications internally or with Gray Group Investments, LLC, any of its owners, members, officers, directors, employees, crew members, shareholders, agents, assigns, or legal representatives, including attorneys, regarding any claim for damages to the HELLO DOLLY VI resulting from Hurricane Sally.

Although movants' blanket assertion of privilege is improper, if any responsive document would be protected by privilege and/or work product, movants may invoke privilege and identify same on a proper, detailed privilege log.

### IV. <u>CONCLUSION</u>

Accordingly, for these reasons as set forth above,

IT IS ORDERED that the Combined Motions for Protective Order and to Quash or Modify Subpoena filed by Defendant and Counter-Claimant Gray Group Investments, LLC and Non-Party A.J. Gallagher & Co. (ECF No. 73) is GRANTED IN PART AND DENIED IN PART.

New Orleans, Louisiana, this 9th day of July, 2021.

                                                                  DONNA PHILLIPS CURRAULT
                                                         UNITED STATES MAGISTRATE JUDGE