UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GREAT LAKES INSURANCE, S.E.                    CIVIL ACTION

VERSUS                                            NO. 20-2795

GRAY GROUP INVESTMENTS, LLC              SECTION "R" (2)

## ORDER AND REASONS

Before the Court are defendant and counter-claimant Gray Group Investments, LLC's ("Gray Group") motion for judgment on the pleadings,[1] and appeal of Magistrate Judge Currault's order compelling discovery.[2] Plaintiff Great Lakes Insurance, S.E. ("Great Lakes") opposes both motions.[3] For the following reasons, the Court denies defendant's motions.

## I.    BACKGROUND

This case arises out of a dispute over insurance coverage of a yacht that sustained damage during Hurricane Sally.  The insurance policy at issue

---

[1]    R. Doc. 22.
[2]    R. Doc. 66 (seeking review of Magistrate Judge Currault's order compelling responses to written discovery and production of documents (R. Doc. 60)).
[3]    R. Docs. 25, 29, 72.

provided that plaintiff Great Lakes would insure defendant Gray Group's yacht, the HELLO DOLLY VI, from January 1, 2020, to January 1, 2021.[4]

Materials submitted by the parties indicate that, prior to the start of coverage, defendant completed and signed an "Application Form" provided by Great Lakes.[5]  The Form names the insured vessel as the HELLO DOLLY VI, and denotes a policy year of January 1, 2020 to January 1, 2021.[6]  The Form also provides that the vessel's "primary mooring location" between July 1 and November 1 will be the Orleans Marina.[7]  The Application Form is signed by Louis S. Crews, Jr., identified as the "Fleet Risk Manager," and is dated October 11, 2019.[8]

On the same day, Gray Group also completed and signed an insurer-provided "Hurricane Questionnaire/Plan."[9]  The Questionnaire/Plan, like the Application Form, provides that the HELLO DOLLY VI will be moored at the Orleans Marina between July 1 and November 1 of the policy year.[10] The Questionnaire also instructs the insured to "provide full details of [its]

---

[4]   R. Doc. 93-1 at 1.
[5]   R. Doc. 22-3.
[6]   *Id.* at 1.
[7]   *Id.* at 2.
[8]   *Id.* at 4.
[9]   R. Doc. 22-4.
[10]   *Id.* at 1.

plan for protecting the vessel in the event of any storm warning."[11]   Gray
Group's response to that question provides:

> Between 120 and 72 hours prior to landfall of a Hurricane
> that may threaten vessel's dockage at Orleans Marina,
> vessel will be fully manned in the event evacuation
> becomes necessary.   As storm tract becomes clearer,
> decision will be made to move to safe harbor by heading
> north up river, east to Florida or west to Texas.  At cruising
> speed, vessel has a cruising range in excess of 2,000
> nautical miles, making safe harbor well within reac[h.]
> Vessel[']s fuel tanks will be topped off following all trips so
> that should evacuation become necessary, fueling will not
> be an issue. . . . If in South Florida, HD VI will be taken to
> Ro[s]cioli Shipyard.  In either scenario, the vessel will be
> cris[s]crossed with lines so as to allow sufficient scope,
> surrounded by fenders and her anchor dropped.
> Generators will be run to avoid a power surge via shore
> power.   All external cushions and canvas that can be
> removed will be removed and stored.[12]

Above the signature line, the Questionnaire/Plan provides that the insured
"agree[s] that this declaration and warranty shall be incorporated in its
entirety into any relevant policy of insurance."[13]   The Questionnaire/Plan,
like the Application Form, is signed by Louis S. Crews, Jr. and is dated
October 11, 2019.[14]

---

[11]     *Id.*
[12]     *Id.* at 2.
[13]     *Id.* at 1.
[14]     *Id.*

3

Under the insurance agreement, the hull is insured for up to $1,900,000, with a $228,000 named-windstorm deductible.[15]   The agreement states that the insurer will "provide coverage for accidental physical loss of or damage to the Scheduled Vessel which occurs during the period of this insuring agreement . . . , subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions."[16]  Under the heading "General Conditions & Warranties," the agreement provides: "This insuring agreement incorporates in full your application for insurance and[,] together with any endorsements issued herein, constitutes the entire contract between us."[17]  It further states:

> Where any term herein is referred to as a "warranty" or where any reference is made herein to the word "warranted," the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception.[18]

The agreement also contains a choice-of-law provision, which provides:

> [A]ny dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice, but where no such well established,

---

[15]   R. Doc. 93-1 at 1.

[16]   *Id.* at 5.

[17]   *Id.* at 12.

[18]   *Id.* at 14.

4

> entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.[19]

Plaintiff alleges, and defendant does not contest, that, on or about September 16, 2020, Hurricane Sally struck the Gulf Coast, while the HELLO DOLLY VI was moored in Pensacola, Florida.[20]  As a result of the storm, the vessel sustained severe damage.[21]  On October 13, 2020, plaintiff Great Lakes filed suit in this Court, seeking a declaratory judgment that Gray Group breached the warranty under the Hurricane Questionnaire/Plan and that the insurance policy covering the HELLO DOLLY VI was void *ab initio*.[22] Specifically, plaintiff contends that Gray Group breached the Hurricane Questionnaire/Plan because the vessel was not moored at the Orleans Marina, was not fully manned, was not evacuated to safe harbor, and did not have its anchor deployed.[23]  Defendant Gray Group filed cross-claims, seeking a declaratory judgment that it did not breach the insurance agreement, and that the loss of the HELLO DOLLY VI is covered by the policy.[24]

---

[19]   *Id.* at 16.
[20]   R. Doc. 20 ¶ 12; R. Doc. 22-1 at 3.
[21]   R. Doc. 22-1 at 3.
[22]   R. Doc. 1; R. Doc. 20 ¶¶ 13-18.
[23]   R. Doc. 20 ¶ 15.
[24]   R. Doc. 17.

On March 9, 2021, defendant moved for a judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that the pleadings establish that the Hurricane Questionnaire/Plan was not a warranty because the agreement does not incorporate it, and that, even if the Questionnaire/Plan were a warranty, defendant did not breach it.[25]  Plaintiff argues that the Court should convert defendant's 12(c) motion into a motion for summary judgment under Rule 56 because defendant attached material outside the pleadings to its motion.[26]  It further argues that the insurance agreement incorporates the Hurricane Questionnaire/Plan, and that defendant breached its terms, thereby voiding the agreement.[27]

While the motion for judgment on the pleadings was pending, Magistrate Judge Donna Phillips Currault compelled defendant's responses to certain discovery requests by plaintiff.[28]  Defendant now appeals the magistrate judge's order.[29]

The Court considers both motions below.

---

[25]     R. Doc. 22-1.
[26]     R. Doc. 25 at 3.
[27]     *Id.* at 7-15, 17-18.
[28]     R. Doc. 60.
[29]     R. Doc. 66.

## II.   MOTION FOR JUDGMENT ON THE PLEADINGS

### A.   Legal Standard

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  In deciding a 12(c) motion, the court must determine whether the complaint, viewed in the light most favorable to the plaintiff, states a valid claim for relief.  *Id.* (citations omitted).  At this stage, the Court "accepts all well-pleaded facts as true." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "Judgment on the pleadings is appropriate only if material facts are not in dispute and questions of law are all that remain." *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998) (citing *Hebert Abstract Co. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).

In ruling on a 12(c) motion, the Court must look only to the pleadings, *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002), and exhibits attached to the pleadings, *see Waller v. Hanlon*, 922 F.3d 590, 600 (5th Cir. 2019); *Voest-Alpine Trading*, 142 F.3d at 891 n.4. "If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  But

uncontested documents referred to in the pleadings may be considered by the Court without converting the motion to one for summary judgment, even when the documents are not physically attached to the complaint. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002). The Court may also consider documents attached to a 12(c) motion without converting the motion into one for summary judgment, if the documents are "referred to in the complaint and are central to the plaintiff's claim." *See Allen v. Hays*, 812 F. App'x 185, 189 (5th Cir. 2020) (quoting *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010)).

If matters outside the pleadings are presented, "the court has 'complete discretion' to exclude them." *Id.* (citing *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988)); *see also* Charles Alan Wright & Arthur R. Miller, 5C Federal Practice & Procedure § 1371 (3d ed. 2021) ("[I]t is well-settled that it is within the district court's discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment or to reject it and maintain the character of the motion as one under Rule 12(c).").

8

### B.   Discussion

### 1.   *Character of the Motion*

Here, plaintiff Great Lakes has submitted documents outside the pleadings in its opposition to defendant Gray Group's motion for judgment on the pleadings.   The documents include a declaration by a senior underwriter,[30] underwriting documents from previous policy years,[31] and emails from the application and renewal process, spanning multiple policy years.[32]   Because this material is not referred to in plaintiff's complaint, the Court may not consider it without converting this motion into a motion for summary judgment.   *Hays*, 812 F. App'x at 189.

The Court elects not to consider plaintiff's non-pleading evidence. Accordingly, the Court does not convert defendant's motion to a motion for summary judgment under Rule 56 and instead "maintain[s] the character of the motion as one under Rule 12(c)."   Wright & Miller, Federal Practice and Procedure § 1371.   The Court confines the 12(c) record to only those documents that are "referred to in the complaint and are central to the plaintiff's claim."   *Allen*, 812 F. App'x at 189 (quoting *Sullivan*, 600 F.3d at

---

[30]   R. Doc. 25-1 at 1-3.
[31]   *Id.* at 8-14.
[32]   *Id.* at 4-7, 15-16, 19-33.

9

546).  Here, the record consists of: the 2020-2021 insurance agreement,[33] the October 2019 Application Form,[34] and the October 2019 Hurricane Questionnaire/Plan.[35]

### 2.  *Analysis*

In maritime cases, a federal court "must apply general federal maritime choice of law rules." *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 890 (5th Cir. 1991) (citing *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 880 n.3 (5th Cir. 1987)).  "Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable." *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009).  "A choice of law provision in a marine insurance contract will be upheld in the absence of evidence that its enforcement would be unreasonable or unjust." *Id.* (citation omitted).

Here, the parties' insurance contract contains a choice-of-law provision, which provides that any disputes "shall be adjudicated according to well established, entrenched principles and precedents of substantive

---

[33]   R. Doc. 93-1.  After initial disputes between the parties about which was the correct insurance agreement, defendant supplemented the record for its 12(c) motion with an agreed-upon version of the contract. *See* R. Doc. 93 (attaching the insurance agreement at R. Doc. 93-1.).

[34]   R. Doc. 22-3.

[35]   R. Doc. 22-4.

United States Federal Admiralty law and practice, but where no such . . . precedent exists, this insuring agreement is subject to the substantive laws of the State of New York."[36]   Neither party argues that enforcement of the choice-of-law provision would be unreasonable or unjust.  Accordingly, the Court gives effect to the parties' contractual choice-of-law provision, providing for the application of entrenched principles of federal maritime law, or, in its absence, New York law.

There is no federal maritime rule governing the construction of maritime insurance contracts.  *Higginbotham v. South Central Towing Co., Inc.*, No. 09-390, 2010 WL 2921637, at *2 (W.D. La. July 16, 2010) (citing *Com. Union Ins. Co. v. Flagship Marine Servs., Inc.*, 190 F.3d 26, 30 (2d Cir. 1999)).  Furthermore, neither party argues for the application of federal maritime law, nor does either party cite any maritime authority on the construction of maritime insurance contracts.  Accordingly, pursuant to the contractual choice-of-law provision, the Court applies New York insurance law to the dispute.

Under New York law, courts interpreting the terms of an insurance contract must "give effect to the intent of the parties as expressed in the clear language of the contract."  *Morgan Stanley Grp., Inc. v. New England Ins.*

---

[36]    R. Doc. 93-1 at 16.

*Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (quoting *Village of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995)).   As part of the threshold interpretive inquiry, the Court must determine "whether the terms of the insurance contract are ambiguous." *Id.* (citing *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998)).   A term is ambiguous if it "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Sarinsky's Garage, Inc. v. Erie Ins. Co.*, 691 F. Supp. 2d 483, 486 (S.D.N.Y. 2010) (quoting *Morgan Stanley*, 225 F.3d at 275) (applying New York contract law to an insurance agreement).   If the "language is unambiguous, the court will discern the parties' intent from the document itself as a matter of law." *Jefferson Block 24 Oil & Gas, L.L.C. v. Aspen Ins. UK Ltd.*, 652 F.3d 584, 589 (5th Cir. 2011) (applying New York law).   Further, "[i]t is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss." *Morgan Stanley*, 225 F.3d at 276.

If the court finds that any terms of the contract are ambiguous, "the burden shifts to the insurer to prove that its proposed interpretation of the

policy is the correct one." *Jefferson Block,* 652 F.3d at 589 (citing *Morgan Stanley*, 225 F.3d at 276).  At this stage, "the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract."  *Id.* (quoting *Morgan Stanley*, 225 F.3d at 275-276); *see also Alexander & Alexander Servs.*, 136 F.3d at 86; *XL Specialty Ins. Co. v. Level Global Invs., L.P.*, 874 F. Supp. 2d 263, 281 n.11 (S.D.N.Y. 2012) (quoting *State v. Home Indem. Co.*, 486 N.E.2d 827 (N.Y. 1985)).  "If the extrinsic evidence is 'so one-sided that no reasonable person could decide the contrary,' the court may resolve the ambiguity as a matter of law." *Jefferson Block*, 652 F.3d at 589 (quoting *Sarinsky's Garage*, 691 F. Supp. 2d at 486).  Otherwise, "the extrinsic evidence must be interpreted by the factfinder."  *Id.*  "Where the ambiguity cannot be resolved by examining extrinsic evidence of the parties' intentions—either as a matter of law or as a matter of fact—the court should construe the ambiguous language . . . against the insurer." *Sarinsky's Garage*, 691 F. Supp. 2d at 486.

Defendant first argues that the Hurricane Questionnaire/Plan is not a warranty under the insurance contract.[37]  Specifically, defendant argues that

---

[37]    R. Doc. 22-1 at 9-12.

the insurance agreement does not refer to the Hurricane Questionnaire/Plan, so its terms form no part of the contract.[38]

Here, the insurance contract expressly "*incorporates in full* [*defendant's*] *application for insurance* . . ."[39]  In interpreting this language, the Court must first determine whether the terms are ambiguous.  *See Morgan Stanley*, 225 F.3d at 275 (explaining that the ambiguity question is a threshold determination when interpreting an insurance contract).

The term "application for insurance" is nowhere defined in the insurance contract.  Further, the language can "suggest more than one meaning when viewed objectively by a reasonably intelligent person." *Sarinsky's Garage*, 691 F. Supp. 2d at 486.  Indeed, both parties have offered reasonable interpretations of the contested language.  Gray Group contends that the "application for insurance" includes only the Application Form.[40] This is a plausible interpretation.  Other than the insurance agreement, the only document before the Court bearing the word "application" is the Application Form.  The Hurricane Questionnaire/Plan does not contain the

---

[38]   *Id.* at 12.

[39]   R. Doc. 93-1 at 12.

[40]   R. Doc. 22-1 at 9, 9 n.25; R. Doc. 22-3.

word "application," nor otherwise state that it is part of the "application for insurance."[41]  These circumstances favor defendant's reading of the contract.

On the other hand, Great Lakes contends that the "application for insurance" includes the Application Form and the Hurricane Questionnaire/Plan.[42]  This too is a reasonable interpretation.  The contract's use of the words "in full" favors an expansive reading of the material to be incorporated.  Furthermore, a comparative review of the Application Form and Hurricane Questionnaire/Plan suggests that the two documents were completed and submitted as one item.  They were signed by the same person and bear the same date.[43]  They both correspond to the HELLO DOLLY VI, with a policy period of January 1, 2020 to January 1, 2021.[44]  They are both insurer-provided forms.[45]  And they both specify that the vessel is to be moored at the Orleans Marina from July 1 to November 1.[46]  Most significantly, the Hurricane Questionnaire/Plan expressly provides that it will be incorporated into the insurance agreement.[47]   Defendant's

---

[41]   *See* R. Doc. 22-4.
[42]   R. Doc. 25 at 2-3.
[43]   *Compare* R. Doc. 22-3 at 4 *with* R. Doc. 22-4 at 1.
[44]   *Compare* R. Doc. 22-3 at 1 *with* R. Doc. 22-4 at 1.
[45]   *Compare* R. Doc. 22-3 *with* R. Doc. 22-4 (both bearing the header "Concept Special Risks Ltd").
[46]   *Compare* R. Doc. 22-3 at 2 *with* R. Doc. 22-4 at 1.
[47]   R. Doc. 22-4 at 1.

representative signed directly beneath this clause.[48]  These circumstances support plaintiff's assertion that the Hurricane Questionnaire/Plan is part of the application and, accordingly, the insurance agreement.

Because the terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person," *Sarinsky's Garage*, 691 F. Supp. 2d at 486, the Court finds that, as a threshold matter, the meaning of the "incorporat[ion] in full [of defendant's] application for insurance," is ambiguous.  Having found that the contract is ambiguous, the Court may consider extrinsic evidence to resolve the ambiguity.  *See Jefferson Block*, 652 F.3d at 589 (citing *Morgan Stanley*, 225 F.3d at 276).  At this stage, the burden shifts to the insurer to prove that its asserted interpretation is the correct one.  *Id.*

The Court finds that an issue of material fact remains in dispute as to the parties' intention with respect to the inclusion of the Hurricane Questionnaire/Plan in the Policy.  "Judgment on the pleadings is appropriate only if material facts are not in dispute . . . ."  *Voest-Alpine Trading*, 142 F.3d at 891 (citing *Hebert Abstract Co.*, 914 F.2d at 76).  Therefore, defendant is not entitled to a judgment on the pleadings under Rule 12(c) that the

---

[48]    *Id.*

Hurricane Questionnaire/Plan was not incorporated as a warranty under the insurance agreement.

Defendant further argues that, even if the Hurricane Questionnaire/Plan is a warranty under the insurance agreement, defendant did not breach the Plan.  Under New York law, "warranties in maritime insurance contracts must be strictly complied with . . . if the insured is to recover." *Com. Union*, 190 F.3d at 31.  This strict requirement "stems from the recognition that it is peculiarly difficult for marine insurers to assess their risk, such that insurers must rely on the representations and warranties made by insureds regarding their vessels' condition and usage." *Id.* at 31-32.

Great Lakes alleges that Gray Group breached the Hurricane Questionnaire/Plan in four ways: (1) the vessel was not moored at the Orleans Marina; (2) the vessel was not fully manned; (3) the vessel was not evacuated to safe harbor; and (4) the anchor was not deployed.[49]  In arguing that it did not breach the Plan, defendant does not dispute any of the facts alleged by plaintiff, as to the four alleged breaches.  That is, Gray Group has not asserted that the vessel was at the Orleans Marina, that it was fully manned, that it was evacuated to safe harbor, nor that its anchor was deployed.

---

[49]   R. Doc. 20 ¶ 15.

Instead, defendant advances its own interpretation of the Hurricane Questionnaire/Plan.  It argues that it was not required to comply with the Plan's provisions because the yacht was in Pensacola when the hurricane struck.[50]  Defendant's theory is that the Plan applies only in the event that the HELLO DOLLY VI is moored in New Orleans or South Florida—in other words, that the Plan has no application, and imposes no obligations, if the yacht is elsewhere.[51]  This argument strains reason.  While the Plan only warrants specific evacuation plans for moorings in New Orleans and south Florida, the provision's specificity does not evince a mutual intent to dispose of all hurricane-related precautions in other locations.  If that were the case, defendant could move the yacht to a mooring location just outside of New Orleans and take no steps to protect the vessel from hurricanes.  This interpretation proposed by defendant is absurd.  Under New York contract law, "absurd results should be avoided."  *Kephart v. Certain Underwriters at Lloyd's of London*, 427 F. Supp. 3d 508, 515 (S.D.N.Y. 2019) (quoting *Mastrovincenzo v. City of New York*, 435 F.3d 78, 104 (2d Cir. 2006)).  The Court finds that the Hurricane Questionnaire/Plan does not vanish when the yacht is in Pensacola.

---

[50]     R. Doc. 22-1 at 13-15.

[51]     *Id.* at 15.

Further, even if *some* of the Plan's conditions attach only when the yacht is in New Orleans or south Florida,[52] other conditions bear no logical connection to the yacht's location.  For instance, the Plan provides that the HELLY DOLLY VI will be "fully manned in the event [that] evacuation becomes necessary."[53]  It also provides that the vessel's anchor will be dropped, and that "[a]ll external cushions and canvas that can be removed will be removed and stored."[54]  *See Kephart*, 427 F. Supp. 3d at 517 (S.D.N.Y. 2019) (finding a breach of a hurricane plan where the insured "ignore[d] . . . other obligations contained in the [hurricane plan], including that [the insured] secure the Vessel's equipment.").  The Court therefore finds that the Hurricane Questionnaire/Plan, if incorporated into the insurance contract, imposed certain obligations on defendant, despite that the vessel was in Pensacola.

Having disposed of defendant's interpretation of the Hurricane Questionnaire/Plan, the Court's inquiry is at an end.  On a 12(c) motion, the Court accepts plaintiff's well-pleaded facts as true.  *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.  Because the facts alleged in the complaint

---

[52]   For instance, defendant would not be able to "head[] north up [the Mississippi] [R]iver," R. Doc. 22-4 at 2, if it were not in or near the Mississippi River at the time evacuation becomes necessary.

[53]   *Id.*

[54]   *Id.*

could amount to a breach of the Hurricane Questionnaire/Plan, defendant is not entitled to a judgment on the pleadings on the issue of breach.

In sum, the ambiguous policy language raises an issue of material fact as to the parties' intentions regarding the scope of the insurance contract. Furthermore, if the Hurricane Questionnaire/Plan is part of the contract, plaintiff has sufficiently alleged a breach. Accordingly, the Court denies defendant's motion for judgment on the pleadings.

## III. REVIEW OF THE MAGISTRATE JUDGE'S ORDER

On May 21, 2021, Magistrate Judge Currault ordered defendant to respond to certain discovery requests by plaintiff.[55] Specifically, Judge Currault compelled responses to certain of plaintiff's interrogatories[56] and requests for admission,[57] as well as the production of certain documents.[58] Defendant now asks the Court to review and reverse the magistrate judge's order.[59] It argues that certain compelled responses and documents are not relevant and are therefore not discoverable.[60] Specifically, defendant

---

[55]    R. Doc. 60.
[56]    *Id.* at 18.
[57]    *Id.* at 19.
[58]    *Id.* at 18-19.
[59]    R. Doc. 66.
[60]    R. Doc. 66-1 at 2-3.

contests its compelled responses to Interrogatories 1, 4, 6, and 9; Admission Requests 13-21, 36, 43, and 44; and requests for any documents other than its policy with Great Lakes, its Application Form, and the Hurricane Questionnaire/Plan.[61]   The contested discovery pertains to defendant's completion of the insurance application materials[62] and its actions related to the HELLO DOLLY VI before and during Hurricane Sally.[63]

On timely objection by a party, a district judge may reverse a magistrate judge's order on a nondispositive pretrial motion if it finds that the order is clearly erroneous or contrary to law.  Fed. R. Civ. P. 72(a); *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995).  This discretion to review covers orders compelling discovery.  *Id.*

Defendant asserts that certain discovery sought by plaintiff is irrelevant and therefore should not be compelled.[64]   In general, "[a]ny nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" may be discovered.  Fed. R. Civ. P. 26(b)(1).  Relevance at the discovery stage is a low bar.  "[A] request for

---

61   *Id.*
62   *See* R. Doc. 66-3 at 7 (Interrogatory No. 9).
63   *See id.* at 1-2 (Interrogatory No. 1), 5-6 (Interrogatory Nos. 4 & 6), 17-19 (Requests for Admission Nos. 13-21), 24 (Request for Admission No. 36), 26-27 (Request for Admission Nos. 43-44).
64   R. Doc. 66-1 at 5-6.

discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Effingo Wireless, Inc. v. Motorola Mobility, LLC*, No. 11-649, 2013 WL 12120965, at *2 (W.D. Tex. Mar. 8, 2013) (citations omitted).  The party opposing relevance bears the burden to establish that "the information sought can have no possible bearing on the claim or defense of the party seeking discovery." *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (2005)).  "Information within [the] scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

Here, plaintiff seeks a declaratory judgment that its policy with defendant is void *ab initio* because defendant breached its warranty under the Hurricane Questionnaire/Plan.[65]  Accordingly, plaintiff seeks discovery regarding defendant's completion of the application for insurance,[66] as well as defendant's compliance with the terms of the Hurricane Questionnaire/Plan.[67]  The information sought is plainly relevant to plaintiff's claims.  If plaintiff can establish that the Hurricane

---

[65]   R. Doc. 20 ¶ 15.

[66]   R. Doc. 66-3 at 7 (Interrogatory No. 9).

[67]   *Id.* at 1-2 (Interrogatory No. 1), 5-6 (Interrogatory Nos. 4 & 6), 17-19 (Requests for Admission Nos. 13-21), 24 (Request for Admission No. 36), 26-27 (Request for Admission Nos. 43-44).

Questionnaire/Plan was a warranty under the policy, and that defendant breached the warranty, plaintiff would be entitled to a declaratory judgment that defendant's loss is not covered.  The discovery plaintiff seeks is relevant to both issues.

Defendant resists production on the grounds that the terms of the Hurricane Questionnaire/Plan are unambiguous, and therefore that extrinsic evidence beyond the policy itself, such as the information sought by plaintiff, is inadmissible.[68]   As an initial matter, evidence need not be admissible to be relevant and discoverable.  Fed. R. Civ. P. 26(b)(1).  More critically, defendant's assertion of unambiguity amounts to a legal conclusion regarding the nature and terms of the insurance contract.  Such an argument is inappropriate on a discovery motion.  *See Chevron TCI, Inc. v. Capitol House Hotel Manager, LLC*, No. 18-776, 2019 WL 5697176, at *7 (M.D. La. Nov. 4, 2019) ("The Court will not determine whether the contract language at issue is ambiguous in the context of a discovery dispute."); *see also Petrello v. White*, 507 Fed. App'x 76, 78 (2d Cir. 2013) (noting that, under New York law, "a writing's ambiguity is a question of law").  Moreover, pursuant to the Court's foregoing consideration of defendant's motion for judgment on the pleadings, the Court *rejects* defendant's legal conclusions.

---

[68]   R. Doc. 66-1 at 4.

The Court's legal finding that the certain facts could amount to a breach of the insurance agreement is fatal to defendant's discovery objections. Accordingly, defendant falls short of showing that the information sought "can have no possible bearing" on plaintiff's claims.   *Dotson*, 2017 WL 11535244, at *2.   The Court denies Gray Group's motion to review the magistrate judge's order compelling discovery.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion for judgment on the pleadings.  The Court further DENIES defendant's motion to review the magistrate judge's order.

New Orleans, Louisiana, this __23rd__ day of July, 2021.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

24